# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| WALTER LASKEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  4:22-cv-488 |
| | ) | |
| 3M COMPANY (f/k/a MINNESOTA | ) | Removed from the Circuit Court of |
| MINING AND MANUFACTURING | ) | Jackson County, Missouri, |
| COMPANY), AGC CHEMICALS | ) | Case No. 2216-CV13786 |
| AMERICAS INC., AMEREX | ) | |
| CORPORATION, ARCHROMA U.S. INC., | ) | |
| ARKEMA, INC., BUCKEYE FIRE | ) | |
| EQUIPMENT COMPANY, CARRIER | ) | |
| GLOBAL CORPORATION, | ) | |
| CHEMDESIGN PRODUCTS, INC., | ) | |
| CHEMGUARD, INC., CHEMICALS, INC., | ) | |
| CHEMOURS COMPANY FC, LLC, | ) | |
| CHUBB FIRE, LTD, CLARIANT CORP., | ) | |
| CORTEVA, INC., DEEPWATER | ) | |
| CHEMICALS, INC., DU PONT DE | ) | |
| NEMOURS INC. (f/k/a DOWDUPONT | ) | |
| INC.), DYNAX CORPORATION, E.I. DU | ) | |
| PONT DE NEMOURS AND COMPANY, | ) | |
| KIDDE-FENWAL, INC., KIDDE P.L.C., | ) | |
| NATION FORD CHEMICAL COMPANY, | ) | |
| NATIONAL FOAM, INC., THE | ) | |
| CHEMOURS COMPANY, TYCO FIRE | ) | |
| PRODUCTS LP, as successor-in-interest to | ) | |
| The Ansul Co; UNITED TECHNOLOGIES | ) | |
| CORPORATION, UTC FIRE & | ) | |
| SECURITY AMERICAS CORPORATION, | ) | |
| INC. (f/k/a GE INTERLOGIX, INC.), | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless

identified individually by full name), by and through undersigned counsel, hereby give notice of

the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court

of Jackson County, Missouri at Kansas City, to the United States District Court for the Western District of Missouri, Western Division. As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiff seeks to hold Tyco and certain other Defendants liable based on its alleged conduct in designing, manufacturing, and/or selling aqueous film-forming foams ("AFFF") that Plaintiff alleges were used in firefighting activities, thereby causing injury to Plaintiff.

2.       Specifically, Plaintiff alleges that per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), were contained in Defendants' AFFF (Compl. ¶ 1). Plaintiff further alleges that "[f]or decades" he "worked as a firefighter at Naval Air Station Cecil Field" (*id.* ¶ 2), and Plaintiff expressly alleges that he seeks to recover damages "arising out of the permanent and significant damages sustained as a result of his exposure to Defendants' AFFF products at various locations during the course of his training and firefighting activities." (*Id.* ¶ 9).

3.      AFFF sold to and used by the U.S. military must appear on the Department of Defense ("DoD") Qualified Products List and comply with the military's rigorous specifications ("MilSpec"). Thus, to the extent that Plaintiff allegedly was exposed in military settings to PFAS from AFFF manufactured by Tyco, those PFAS derived from MilSpec AFFF. Under the federal "government contractor" defense recognized in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated

2

in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4.      This action was filed on June 15, 2022 in the Circuit Court of Jackson County, Missouri, at Kansas City, bearing Case No. 2216-CV13786. (Ex. A, Petition, hereinafter "Complaint" or "Compl.") Venue is proper in this Court pursuant to 28 U.S.C. §§ 105(b) and 1441(a) because the Circuit Court of Jackson County, Missouri, at Kansas City, is located in the Western District of Missouri, Western Division.

5.      Tyco Fire Products LP and Chemguard, Inc. were served on June 28, 2022. Accordingly, removal is timely.

6.      Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under 28 U.S.C. § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

7.      Plaintiff generally alleges that Defendants, including Tyco, have designed, manufactured, marketed, distributed, and/or sold AFFF products and/or fluorinated surfactants used therein, which contain PFAS, including PFOS, PFOA, and/or their precursors. (*E.g.*, Compl. ¶¶ 1, 4-7, 13-65). Plaintiff expressly alleges that he seeks to recover damages "arising out of the permanent and significant damages sustained as a result of his exposure to Defendants' AFFF products at various locations during the course of his training and firefighting activities."

3

(*Id.* ¶ 9). Plaintiff also alleges that "Defendants' PFAS-containing AFFF products were used by Plaintiff in their intended manner, without significant change in the products' condition," (*id.* ¶ 7), and that his "consumption, inhalation and/or dermal absorption of PFAS from Defendant's [sic] AFFF products caused him to develop the serious medical conditions and complications alleged herein" (*id.*).

8.      Plaintiff asserts claims against all Defendants, including Tyco, for negligence (*id.* ¶¶ 127–130); inadequate warning (*id.* ¶¶ 131–136); design defect (*id.* ¶¶ 137–143); strict liability (*id.* ¶¶ 144–149); strict liability (restatement) (*id.* ¶¶ 150–158); fraudulent concealment (*id.* ¶¶ 159–166); breach of express and implied warranties (*id.* ¶¶ 167-172); and wantonness (*id.* ¶¶ 173-177).

9.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and for other Defendants, and a copy is being filed with the Clerk of the Circuit Court of Jackson County, Missouri at Kansas City.

10.      By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

11.      Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders and the current state court docket are attached to this Notice of Removal as Exhibit "A."

12.      Tyco reserves the right to amend or supplement this Notice of Removal.

**REMOVAL IS PROPER UNDER THE FEDERAL
OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)**

13.      Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at

4

the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its acts taken pursuant to a federal officer's directions, have a causal nexus with the plaintiff's claims or injuries or are otherwise related to the action; and (d) it can assert a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

14.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construed" in favor of removal. *Isaacson*, 517 F.3d at 136.

15.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's alleged injuries are caused at least in part by MilSpec AFFF. *See, e.g., Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers

and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

A.     **MilSpec AFFF**

16.     Since the late 1960s or early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted an AFFF-related patent in 1966.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.
[2] *See* U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).
[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"),

17.     The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command.  The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

18.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.  And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short

_____

https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.
[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.
[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.
[6] *Id.*

7

term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

**B.**     **All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

       *1.*     *The "Person" Requirement Is Satisfied*

19.     The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and a corporation, respectively) are "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135–36.

       *2.*     *The "Acting Under" Requirement Is Satisfied*

20.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson*, 517 F.3d at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

21.     The requirement of "acting under" federal office is met here because Plaintiff's claims, at least in part, challenge Tyco's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at \*9 (describing MilSpec AFFF as a "mission-critical" and "lifesaving product"

8

used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7] Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that Tyco and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same). If Tyco and other manufacturers did not provide MilSpec AFFF for use at military bases, the government would have to manufacture and supply the product itself.

22. In designing, manufacturing and supplying the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.
[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

### 3. *The Causation Requirement Is Satisfied*

23. The third requirement, that the defendant's acts taken "under color of federal office" have a causal nexus with the plaintiff's claims or injuries or are otherwise related to the action, erects a hurdle that "is quite low." *Isaacson*, 517 F.3d at 137.[9] To satisfy this requirement, it is sufficient for a defendant to establish that an act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties. *Id.* at 137–38.

24. Here, Plaintiff's claims arise at least in part from Tyco's production and sale of AFFF manufactured to military specifications for use at military facilities. Plaintiff alleges that the use of PFAS in AFFF is the source of their injuries. Tyco contends that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by Tyco and other manufacturers to meet specifications established by the DoD. Military installations are required to employ MilSpec AFFF. The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Tyco could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims [Defendants] manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where Defendants'

---

[9] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

25.     Here, Plaintiff's purported injuries arise at least in part from MilSpec AFFF.  The causal connection between Plaintiff's alleged injuries and Tyco's actions under color of federal office thus is clear.  It is irrelevant that Plaintiff does not expressly contend that he has been injured by MilSpec AFFF.  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.     The "Colorable Federal Defense" Requirement Is Satisfied

26.     The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

27.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[10]   Moreover, "this inquiry is undertaken whilst viewing the facts in the

---

[10] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a

light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

28.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

29.     Tyco has satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Tyco's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured

_____

colorable defense." (internal citation omitted)).

according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same); MDL Order 3, at 5 (same); *see also Nessel*, 2021 WL 744683, at \*4.

30. Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[11] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[12] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that]

---

[11] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002) (excerpt).
[12] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

13

saves lives and protects assets by quickly extinguishing petroleum-based fires."[13]  Indeed, Naval

Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and

recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed

limits for PFOS and PFOA) in AFFF formulations.[14]  *See Ayo*, 2018 WL 4781145, at *12 ("That

the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them

supports the position that the government approved reasonably precise specifications for the

claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed

the U.S. military of dangers associated with its AFFF products of which the military was not

already aware, [defendant] points to materials such as a November 2017 Department of Defense

report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with

PFOS/PFOA in drinking water . . . .").

31.     At minimum, these facts constitute colorable evidence that Naval Sea Systems

Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after

weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co.*

(*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011

WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government

knew as much or more than the defendant contractor about the hazards of the product.'" (citation

omitted)).  Where, as here, the government has exercised "discretionary authority over areas of

significant federal interest such as military procurement," the government contractor defense

---

[13] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.
[14] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

32.     Tyco's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

WHEREFORE, Tyco hereby removes this action from the Circuit Court of Jackson County, Missouri at Kansas City, to the United States District Court for the Western District of Missouri, Western Division.

Dated: July 28th, 2022

Respectfully submitted,

*/s/ Kara T. Stubbs*

Kara T. Stubbs                   MO # 43414
Kehl D. Friesen                  MO # 65909
BAKER STERCHI COWDEN & RICE LLC
2400 Pershing Road, Suite 500
Kansas City, MO 64108
Telephone:    (816) 471-2121
Facsimile:    (816) 472-0288
stubbs@bscr-law.com
kfriesen@bscr-law.com

**ATTORNEYS FOR DEFENDANTS**
**TYCO FIRE PRODUCTS LP and**
**CHEMGUARD, INC.**

15

## CERTIFICATE OF SERVICE

I certify that on July 28, 2022, I caused a true and correct copy of the foregoing Notice of

Removal to be served via e-mail on the following:

Tim J. Riemann
RIEMANN INJURY LITIGATION LLC
1600 Genessee St., Ste. 860
Kansas City, MO 64102
tim@injurylit.com

Timothy R. West
THE WEST LAW FIRM, LLC
610 19th Street
Huntington Beach, CA  92648
tim@timwestlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

Daniel L. Ring
Tyler D. Alfermann
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
srashid@mayerbrown.com
rbulger@mayerbrown.com
dring@mayerbrown.com
talfermann@mayerbrown.com
**ATTORNEYS FOR DEFENDANT 3M COMPANY**

Peter Condron
Clifford J. Zatz
Laura Offenbacher Aradi
CROWELL & MORING
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
pcondron@crowell.com
czatz@crowell.com
laradi@crowell.com
**ATTORNEYS FOR DEFENDANT AGC CHEMICALS AMERICANS INC.**

Jennifer Simon
Alan Truitt
KAZMAREK MOWREY CLOUD LASETER LLP
1230 Peachtree Street N.E., Suite 900
Atlanta, GA  30309
jsimon@kmcllaw.com
atruitt@kmcllaw.com
**ATTORNEYS FOR DEFENDANT AMEREX CORPORATION**

Heidi Levine
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
hlevine@sidley.com
**ATTORNEY FOR DEFENDANT ARKEMA INC.**

Melanie Black Dubis
Charles Raynal
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 400
Raleigh, NC  27601
charlesraynal@parkerpoe.com
melaniedubis@parkerpoe.com
**ATTORNEYS FOR DEFENDANTS ARCHROMA MANAGEMENT LLC
and CLARIANT CORPORATION**

Michael L. Carpenter
GRAY LAYTON KERSH SOLOMON FURR & SMITH, P.A.
P. O. Box 2636
Gastonia, NC  28053-2636
mcarpenter@gastonlegal.com
**ATTORNEY FOR DEFENDANT BUCKEYE FIRE EQUIPMENT COMPANY**

Jonathan I. Handler
Keith H. Bensten
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA  02110
kbensten@daypitney.com
jihandler@daypitney.com
**ATTORNEYS FOR DEFENDANTS KIDDE-FENWAL, INC., KIDDE, PLC,
CARRIER GLOBAL CORPORATION, CHUBB FIRE, LTD., UNITED
TECHNOLOGIES CORPORATION, and UTC FIRE & SECURITY AMERICAS
CORPORATION, INC.**

Jonathan Blakley
GORDON REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800
Chicago, IL  60606
jblakley@grsm.com
**ATTORNEY FOR DEFENDANT CHEMDESIGN PRODUCTS INC.**

John Parker
Oliver Twaddel
GOLDBERG SEGALLA LLP
711 Third Avenue, Suite 1900
New York, NY  10017
jparker@goldbergsegalla.com
otwaddell@goldbergsegalla.com
**ATTORNEYS FOR DEFENDANT CHEMICALS INC.**

Kat Hacker
BARTLIT BECK LLP
1801 Wewatta, Suite 1200
Denver, CO  80202
dupont@bartlitbeck.com
**ATTORNEY FOR DEFENDANTS CORTEVA INC. and
DuPONT DE NEMOURS INC.**

Kurt D. Weaver
WOMBLE BOND DICKSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC  27601
kurt.weaver@wbd-us.com
**ATTORNEY FOR DEFENDANT DEEPWATER CHEMICALS INC.**

Kirk G. Warner
Clifton L. Brinson
Addie K.S. Ries
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.
P.O. Box 2611
Raleigh, NC  27602-2611
kwarner@smithlaw.com
cbrinson@smithlaw.com
aries@smithlaw.com
**ATTORNEYS FOR DEFENDANT DYNAX CORPORATION**

18

David R. Erickson
Brent Dwerlkotte
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
derickson@shb.com
dbdwerlkotte@shb.com
**ATTORNEYS FOR DEFENDANTS E. I. DUPONT DE NEMOURS AND**
**COMPANY, THE CHEMOURS COMPANY and THE CHEMOURS**
**COMPANY FC, LLC**

Ethan R. Ware
WILLIAMS MULLEN
1441 Main Street, Suite 1250
P.O. Box 8116
Columbia, SC 29202
eware@williamsmullen.com
**ATTORNEY FOR DEFENDANT NATION FORD CHEMICAL COMPANY**

Keith E. Smith
GREENBERG TRAURIG, LLP
Three Logan Square
1717 Arch Street, Suite 400
Philadelphia, PA 19103
smithkei@gtlaw.com
**ATTORNEY FOR DEFENDANT NATIONAL FOAM INC.**

*/s/ Kara T. Stubbs*